UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINNIFRED CATHLEEN GALOWNIA, | No.  2:25-cv-0205-EFB (SS) |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance benefits under Title II of the Social Security Act. ECF No. 1.  The parties have filed cross-motions for summary judgment, which are addressed herein. ECF Nos. 7, 12.[1]  For the reasons provided below, plaintiff's motion is granted and defendant's motion is denied.

**I.    Background**

On September 24, 2021,[2] plaintiff filed an application for Social Security Income (SSI)

---

[1]  The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1). ECF No. 8.

[2]  Elsewhere, the record indicates that this application was submitted to the Social Security Administration on October 5, 2021. *See* AR 226.  The application itself bears the date September 24, 2021.  Nonetheless, the distinction appears immaterial to the issues raised in the pending motions.

1

disability benefits under Title II of the Social Security Act.[3]  Administrative Record (AR) 195-201.[4]  She alleged disability due to hemiplegic migraine, fibromyalgia, and depression/anxiety.[5]  AR 228.  Plaintiff's application was denied on February 28, 2022, AR 68, and her request for reconsideration was denied on October 24, 2022.  AR 91; *see* AR 92-110.

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) on this adverse decision.  AR 111-132.  The ALJ held a hearing on February 15, 2024, at which plaintiff testified.  AR 33-49, 174.  By written decision on March 7, 2024, the ALJ found plaintiff not disabled relative to her claim for SSI disability benefits.  AR 28.

Plaintiff sought review of this decision by the Appeals Council.  AR 192-194.  On November 18, 2024, the Appeals Council denied review, making the ALJ's decision final for purposes of judicial review.  AR 1-7.  Plaintiff initiated this action on January 15, 2025.

**II.    Legal Standard**

**A.  The Disability Standard**

In plaintiff's complaint, she seeks review of the Commissioner's denial of her application for disability insurance benefits under Title II, pursuant to 42 U.S.C. § 405(g), ECF No. 1, and asserts the same in her motion for summary judgment.  ECF No. 7 at 5.  The complaint raises three assignments of error in the ALJ's findings.  ECF No. 1 at 2.  Notwithstanding this, in her argument in support of her motion for summary judgment, plaintiff raises four, more specific, assignments of error.  ECF No. 7 at 9.

To qualify for disability insurance benefits under Title XVI of the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[6] which can be expected to result in death

---

[3]  Plaintiff had filed a prior claim which was not re-opened in this proceeding, and consultative exam opinions in 2016 and 2018 were deemed too remote in time to be instructive to her current residual functional capacity (RFC) assessment.  AR 27, 224-225.

[4]  Defendant lodged the administrative record on March 12, 2025.  ECF No. 6.

[5]  Plaintiff's initial disability application at the State agency level claimed epilepsy and depressive, bipolar and related disorders.  AR 68, 91.

[6]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). At each of these five steps, "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In steps one through four, the burden of proof is on the claimant. *Ford*, 950 F.3d at 1148. A claimant establishes a prima facie case of qualifying disability once he has carried the burden of proof from step one through step four. *Ibid*.

Before making the step four determination, the ALJ first must determine the claimant's RFC. *Batson*, 359 F.3d at 1194; *see* 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a). A determination of RFC is not a medical opinion, but a legal decision

---

diagnostic techniques. 42 U.S.C. § 423(d)(3).

that is expressly reserved for the Commissioner. *See* 20 C.F.R. § 416.927(d) (RFC is not a medical opinion); 20 C.F.R. § 416.946 (identifying the ALJ as responsible for determining RFC); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 416.920(g); *Batson*, 359 F.3d at 1194. If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled. *Ibid.*

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart (Thomas)*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co. (CalPortland)*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless, *Stout*, 454 F.3d at 1055-56, and the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

In conducting its analysis, the "reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The court may not affirm the ALJ on a ground upon which she did not rely; rather, the court may review only the reasons stated by the ALJ in her decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Further, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

**III.     The ALJ's Findings of Fact and Conclusions of Law**

In his March 7, 2024 decision, the ALJ found plaintiff not disabled on her application for benefits under Title II. The ALJ issued findings as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2.  The claimant has not engaged in substantial gainful activity since September 16, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments:  migraines; bilateral shoulder impingement; and asthma (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.  After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following additional limitations:  The claimant can occasionally climb ladders, ropes, or scaffolds, crouch, or crawl; frequently climb ramps and stairs, balance, stoop, and kneel; and occasionally reach overhead bilaterally.  In addition, the claimant should avoid concentrated exposure to fumes, odors, dust, and gases; and should avoid even moderate exposure to hazards, such as working at unprotected heights or around dangerous moving machinery.

6.  The claimant is capable of performing past relevant work as a preschool teacher as generally performed.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from September 16, 2019, through the date of this decision (20 CFR 404.1520(f)).

AR 19-28.

## IV.    Analysis

Plaintiff raises four issues on review.[7]  First, that the ALJ failed to provide clear, convincing, and well-supported reasons for discounting her allegations of chronic daily migraines.  ECF No. 7 at 9-13.  Second, that the ALJ failed to properly evaluate whether plaintiff's migraine impairment medically equals Listing 11.02.  ECF No. 7 at 13-14.  Third, that the ALJ failed to properly evaluate the examining medical source opinion of consultative psychologist Michael Molyn, Psy. D., ECF No. 7 at 14-16.  Fourth, that that the ALJ failed to explicitly include mental work restrictions in plaintiff's RFC.  ECF No. 7 at 16-18.  The court concludes that plaintiff has shown she is entitled to summary judgment and remand on the last of her claimed grounds.

### A.  The ALJ's Partial Rejection Of Allegations Of Chronic Daily Migraines

Plaintiff argues that the medical evidence shows a long history of chronic and frequent migraines, treatment from neurologists, medications, Botox injections, and acupuncture.  ECF No. 7 at 9.  She testified to limited benefits from treatment, and no benefit from Botox injections.  ECF No. 7 at 9; *see* AR 39-40.  She argues that the ALJ could only reject her testimony about her symptoms by offering "'specific, clear and convincing reasons' for doing so."  ECF No. 7 at 10 (citing *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017)).  Specifically, plaintiff argues that the record does not support the ALJ in discounting her testimony about the severity and frequency of her migraines, and she disputes the ALJ's finding that treatments have helped her.  ECF No. 7 at 10.  She argues that the ALJ erred in relying on physical examination results because those results "have little probative value to evaluating the frequency of her migraines or the degree of symptomatology."  ECF No. 7 at 11.  Finally, she argues that evidence of her T-shirt and candle-making are also not probative of the frequency and severity of her migraines.  ECF No. 7 at 12.  Upon review of the record, the court concludes the ALJ's determination was supported by

---

[7]  Plaintiff's complaint raised three issues, which were stated more generally and broadly than the issues argued in her motion for summary judgment:  (1) lack of substantial medical or vocational evidence to support the legal conclusion that plaintiff is not disabled; (2) lack of substantial evidence to support a finding that plaintiff could perform any substantial gainful activity; and (3) the evidence of record supports only the finding that plaintiff is disabled.  ECF No. 1 at 2.

substantial evidence, *see Biestek*, 587 U.S. at 99, and that the ALJ provided adequate reasons for discounting portions of plaintiff's testimony in making that determination. *See Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

When determining a plaintiff's RFC, the ALJ must consider the plaintiff's testimony describing their symptoms and engage in a two-step inquiry to determine whether such testimony is credible. *Garrison*, 759 F.3d at 1014-15. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted)). If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (quoting *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)); *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006).

Here, in considering plaintiff's claim for benefits under Title II, the ALJ found that plaintiff had the severe impairments of migraine, bilateral shoulder impingement, and asthma, but rejected in part plaintiff's statements considering the intensity, persistence, and limiting effect of the symptoms of these impairments.[8] AR 19, 25.  Plaintiff testified that she experienced daily migraine headaches that lasted anywhere from one hour to a major portion of the day, that it takes her a while to get up because she always has a headache, that her husband does most of the cleaning in the house, that she can fall and has trouble using her hand, and her side goes limp. AR 24 (summarizing testimony); *see also* AR 39-46 (hearing testimony).  The ALJ noted that plaintiff also represented in her September 16, 2022 function report that she experienced daily hemiplegic migraine attacks which impaired her ability to speak or move on the right side and which might last hours or days, that she sometimes passes out and cannot go out alone because she is a fall risk, and she does not drive because she might have an attack.  AR 24 (citing Exh.

---

[8] Plaintiff's motion does not contest the ALJ's findings regarding bilateral shoulder impingement and asthma.

9E/6).

But the ALJ found that plaintiff's statements in her testimony and her function report were not entirely consistent with the medical and other evidence in the record. AR 24. Her medical records indicated that in February 2021 plaintiff reported having 1-2 hemiplegic migraines a day. AR 25 (citing Ex.3F/43). As of December 2022, plaintiff reported that the medication Emgality was helping and the frequency of her headaches was much better. AR 25 (citing Ex.9F/107). In March 2023, plaintiff reported to her doctor "that Emgality had helped 'by slowing the oftenness and the length of her [hemiplegic migraine] attacks' but she still had other symptoms." AR 25 (citing Ex. 9F/153). During an emergency room visit on August 29, 2023, plaintiff reported breakthrough headaches 3-4 times a month. AR 25 (citing Ex. 10F/3). In October 2023, plaintiff reported that Botox treatment was effective and had reduced her headache frequency. AR 26 (citing Ex.12F/29). This is consistent with plaintiff's report in a telephone appointment on December 27, 2023 that her migraine frequency was "[o]nce a week [], usually last about an hour, occasionally recurr[e]nce attack." AR 1167 (Exh.12F/84). Also in December 2023, plaintiff reported that acupuncture treatment had reduced her pain. AR 26 (citing Ex. 12F/75-76). The ALJ summarized the medical record evidence regarding plaintiff's migraines as follows:

> In sum, the claimant has a history of migraines. She presented to the emergency room once with a headache and has received Botox injections, Emgality injections and acupuncture. The records indicate that this treatment helped the claimant. In December 2022, the claimant reported that Emgality was helping her headaches and that they were reduced in frequency. Ex. 9F/153 [AR 918]. In October 2023, the claimant reported that Botox was effective and that she had a good response to the treatment. She also reported improvement in her pain after acupuncture. Exs. 12F/29, 75-76 [AR 1112].

AR 26.

Despite plaintiff's contention to the contrary, the ALJ gave sufficiently clear and convincing reasons to justify rejecting in part plaintiff's testimony about the frequency and severity of her migraine headaches. The ALJ's partial rejection of plaintiff's testimony was supported by specific, clear, and convincing reasons. *See Garrison*, 759 F.3d at 1014-15. First, the reasons provided by the ALJ were not too vague to satisfy this standard. *See* AR 25-26. An ALJ's discussion of the reasons for rejecting, or partially rejecting, a claimant's testimony is

sufficiently specific where the ALJ's findings contain enough detail "to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony," *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002), and where "a reviewing court [is] not . . . forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell,* 947 F.2d at 345-46; *see, e.g., Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996), *superseded by statute on other grounds*.  Under this standard, the ALJ's reasons for partially rejecting plaintiff's testimony were sufficiently specific.  In explaining why he did not fully credit plaintiff's description of the intensity, persistence, and limiting effect of her impairments, the ALJ cited medical evidence in the record tending to contradict plaintiff's testimony, including plaintiff's own reports to medical providers that Emgality, Botox and acupuncture treatments had helped her and had reduced the frequency of the migraines.  The medical record indicated that plaintiff's migraine condition had improved over time and with treatment, from 1-2 hemiplegic migraines a day in February 2021 to a frequency of 3-4 times a month as of August 29, 2023, and that as of October 2023 Botox treatments had also reduced headache frequency,[9] and also plaintiff had reduced pain as of December 2023.  AR 25-26.

Taken together, these findings satisfy the requirement that the ALJ explain "specific[ly]" why he rejected in part plaintiff's testimony, *see Garrison*, 759 F.3d at 1014-15, so as to enable the court to effectuate a meaningful review of the ALJ's disability determination and underlying findings.  *See Bunnell,* 947 F.2d at 345-46; *see, e.g.*, *Lester*, 81 F.3d at 834 (holding ALJ's reasons for rejecting claimant's testimony not sufficiently specific where the ALJ had simply made a "general statement that the claimant's testimony was unbelievable" but "did not provide any specific reasons for her disbelief other than a lack of objective evidence"); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (holding that ALJ was not sufficiently specific in partially rejecting claimant's allegations of symptoms where ALJ simply "repeated that there was little or nothing in the record to support" the allegations); *Varney v. Sec'y of Health & Hum. Servs.*, 846 F.2d 581, 584 (9th Cir.), *on reh'g,* 859 F.2d 1396 (9th Cir. 1988) (same, where ALJ simply stated

---

[9] It is unclear whether this report as of October 2023 indicated a further reduction from the frequency reported on August 29, 2023.

in one sentence that plaintiff's allegations of her symptoms were unsupported by the objective medical evidence).

Plaintiff's next argument appears to mischaracterize the ALJ's analysis of examination results indicating plaintiff had normal gait, motor strength, sensation, and negative straight-leg-raise. Plaintiff contends that the ALJ improperly inferred that these results "somehow disproved the nature and frequency of Plaintiff's migraines." ECF No. 7 at 11 (citing AR 26). But the ALJ referenced these results in the context of discussing plaintiff's shoulder impingement and shoulder surgery, and limitations as to reaching and performing light work activity, and not as having relevance to plaintiff's migraine condition. AR 26. Plaintiff's argument is not well-founded and is unpersuasive.

Plaintiff continues with another argument that similarly misconstrues the ALJ's analysis. She claims that the ALJ erred in taking note that in October 2022 plaintiff made T-shirts and candles with her hands because these activities are "not probative to the evaluation of the frequency and severity of her migraines" and the ALJ failed to clearly show how these activities conflicted with plaintiff's claim of disabling migraines. ECF No. 7 at 12. But once again, the ALJ's analysis did not cite plaintiff's T-shirt and candle-making activities in relation to his analysis of her migraine condition. The ALJ instead referenced these activities as relevant to the effects of plaintiff's shoulder impingement and shoulder surgery, and to his finding of plaintiff's limitation to light work. AR 26.

Plaintiff makes a final argument in her reply brief that similarly misconstrues the ALJ's analysis. Defendant's response points out that the ALJ considered prior administrative medical findings (PAMFs) in the course of analyzing plaintiff's migraine condition, ECF No. 12 at 8, whereas plaintiff's reply inaccurately maintains that "there was no indication by the ALJ that the opinions of the State agency doctors constituted a reason he was rejecting Plaintiff's testimony," ECF No. 13 at 2-3. Defendant's summation of the record is the more correct one, because the ALJ did explicitly cite the opinions of each of the three consulting doctors and explained his findings about the degree of persuasiveness of each opinion.[10] AR 20, 26-27. Specifically, the

_____

[10] Also, the ALJ did not entirely reject plaintiff's testimony but rather found her

10

ALJ found that the opinion of Dr. Ali who performed an internal medicine consultative exam on February 1, 2022, was only partially persuasive because it was not fully consistent with the record of the cumulative effect of plaintiff's medical conditions.  AR 26-27 (citing Exh. 5F (AR 591-596)).  The ALJ found that the mental status exam determinations at the initial stage (by Dr. Trias) and the reconsideration stage (by Dr. Amon) – which both determined that plaintiff's mental state "was generally normal" –  were persuasive because they were "supported by a narrative review of the evidence, including consultative exams and the [plaintiff's] activities of daily living."  AR 20; AR 50-68 (Trias); AR 69-91 (Amon).  Plaintiff's argument regarding the ALJ's consideration of the consultative exam results fails because it misconstrues the ALJ's findings, and the ALJ explained his analysis with specific, clear, and convincing reasons.

**B.   Whether Plaintiff's Migraine Impairment Medically Equals Listing 11.02**

Plaintiff argues that the ALJ erred by concluding at step three that plaintiff did not satisfy the criteria for determining whether a migraine disorder meets or equals an impairment listed in Appendix 1 to Subpart P of the Social Security disability regulations (the "Listings").  20 C.F.R. § 416.920(a)(4)(iii).

> A plaintiff may establish disability at step three of the evaluation process if she shows that her medical impairment meets or equals one of the impairments and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(iii).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citations omitted).

*Lucero v. Commissioner of Social Security Admin.*, No. CV-22-00598-PHX-SMB, 2023 WL 3321692, at *2 (D. Ariz. May 9, 2023).  There is no specific listing for migraine headaches, but primary headache disorders may be found medically equal to the listing for epilepsy, at Listing 11.02.  Social Security Ruling 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019); *see Manor v. Kijakaz*i, No. 2:22-cv-0666 DB, 2023 WL 5836483, at *4 n.5 (E.D. Cal. Sept. 8, 2023).  "The various sections of Listing 11.02 require different frequency of episodes, despite adherence to prescribed treatment."  *Carvalho v. Kijakazi*, No. 2:21-cv-10199 CKD, 2023 WL 4848493, at *6

---

testimony partially persuasive for the reasons already discussed.

(E.D. Cal. July 28, 2023) (citations omitted). "It is plaintiff's burden to prove that she medically equaled Listing 11.02." *Id*. The equivalent impairment must be medically determinable, meaning that it "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques, and established by medical evidence consisting of signs, symptoms, and laboratory findings." *Elizabeth M.C. v. O'Malley*, No. EDCV 23-0424-AS, 2024 WL 6861866, at *2 (C.D. Cal. Apr. 15, 2024) (citing 20 C.F.R. § 404.1521). Symptoms or an unsupported diagnosis are insufficient to prove an equivalent impairment. *Id*. (citing 20 C.F.R. § 404.1521 and *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005)). The diagnosis must be made by an acceptable medical source who has documented that he reviewed the medical history, conducted a physical examination, excluded alternative medical and psychiatric causes, observed a typical headache event and made a detailed description of it including all associated phenomena, and whether the headaches persist despite treatment. SSR 19-4P, 2019 WL 4169635, at *6; *see also* 20 C.F.R. § 404.1502(a) (definition of acceptable medical source; broadly, a licensed physician or psychologist).

The ALJ concluded that the medical evidence failed to show that plaintiff "suffers from generalized tonic-clonic seizures[11] or dyscognitive seizures as described [in Listing 11.02] nor do[] her migraines equate to the frequency and severity required of this listing." AR 22-23. Plaintiff points to statements in the record indicating she was experiencing migraine attacks with auras multiple times per day, resulting in visual disturbance, cognitive slowing, right-sided sensory and motor dysfunction, and possible disassociation. ECF No. 7 at 14. But defendant responds that plaintiff's citations are to her own statements that she made to the agency, and to her own emails to her medical providers, which do not meet the standard in SSR 19-4p of a detailed description of the condition from an acceptable medical source. ECF No. 12 at 10 (citing SSR 19-4p, 2019 WL 4169635, at *7). Plaintiff does not show evidence in the record that satisfies the standard required by SSR 19-4p and has not shown that the ALJ erred in concluding

---

[11] Defendant explains that tonic-clonic seizures, also known as grand mal seizures, cause a loss of consciousness and violent muscle contractions, with or without convulsions or loss of muscle control. ECF No. 12 at 9-10.

that the record does not support a finding that plaintiff's migraine impairment medically equals Listing 11.02.

### C.    The Opinion Evidence of Michael Molyn, Psy.D.

Plaintiff argues that the ALJ erred in the weight given to the opinion of Michael Molyn, Psy.D.  ECF No. 7 at 14-15.  On February 8, 2022, Molyn conducted a psychological consultative exam and opined that plaintiff had a moderate impairment of her ability to interact and a mild impairment of her "ability to deal with changes in a routine work setting, normal hazards, and public transportation."[12]  AR 20; *see also* AR 597-602 (Molyn's report).  According to plaintiff, the ALJ erred by "summarily dismiss[ing]" Molyn's assessment, given the "complex relationship of Plaintiff's migraines, her social isolation, and her reduced stress tolerance."  ECF No. 7 at 16. But this is an inaccurate characterization of the ALJ's finding, which was that Molyn's assessment was partially persuasive in that it contradicted Molyn's own observations that plaintiff was "cooperative, friendly, had normal speech, and carried on a linear and goal-oriented conversation."  AR 20.  An ALJ may discount an opinion that is inconsistent with clinical findings.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

The ALJ also noted that Molyn's assessment of moderate impairment was not corroborated by mental status exams conducted by state agency medical consultants at the initial and reconsideration levels in February and November 2022.[13]  AR 20 (citing Exhs. 1A/9, 1A/11, 3A/12-13).  It is within the ALJ's purview to "weigh the value of [] various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject." *Lingenfelter,* 504 F.3d at 1042; *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (the ALJ "need only provide an explanation supported by substantial evidence" (internal quotation and citation omitted)).  The ALJ further explained that the consultants' determinations

---

[12]  Molyn also opined that plaintiff had unimpaired ability "to understand, remember and carry out detailed or complex instructions, maintain attention, and respond appropriately to usual work situations."  AR 20.  Plaintiff does not appear to dispute the ALJ's implicit acceptance of this aspect of Molyn's opinion.  *See* ECF No. 7 at 14-16.

[13]  As already noted, the reconsideration level consultation was actually conducted in October (not November) 2022.

are themselves consistent with plaintiff's "history of depression in remission, normal mental status exams, and her independent performance of her activities of daily living," as well as plaintiff's "lack of any formal treatment for her mental health."  AR 20 (citing 7F/30, 8F/9, 13F/48).  The consultant mental status exams and plaintiff's mental health history are substantial evidence supporting the ALJ's reasons for finding Molyn's assessment to be only partially persuasive.

### D.  Mental Work Restrictions In The RFC Analysis

Plaintiff argues that the ALJ erred by failing to explicitly address the mild mental limitations the ALJ found at step two of the sequential evaluation, in the ALJ's assessment of plaintiff's RFC.  ECF No. 7 at 16-18.  The ALJ determined that plaintiff has the mental health impairment of adjustment disorder, and that her adjustment disorder causes no more than a mild limitation in the functional area of concentrating, persisting, or maintaining a pace.[14]  AR 20 (citing Exh. 6F/5); AR 21.  In reaching this conclusion, the ALJ considered plaintiff's assertion that she had trouble completing tasks and concentrating, weighed it against Molyn's assessment that plaintiff had no limitations in concentrating, persisting, and maintaining a pace, and concluded that the evidence viewed in the light most favorable to plaintiff warranted a finding of mild limitation.  AR 21.  The ALJ explained that because plaintiff's limitation is "no more than 'mild'" and the evidence does not otherwise show more than a minimal limitation in plaintiff's ability to do work, the limitation is nonsevere.  AR 21-22 (citing 20 C.F.R. § 404-1520a(d)(1)).  The ALJ stated that his step two finding regarding plaintiff's degree of limitation is reflected in his assessment of plaintiff's RFC, and that he "considered all of the [plaintiff's] medically determinable impairments, including those that are not severe, when assessing the [plaintiff's] residual functional capacity."  AR 22.  The ALJ did not include any further discussion of the mild mental limitations found at step two in the RFC assessment at step four.  AR 24-28.

/////

---

[14]  There are four broad functional areas of mental functioning.  20 CFR, Part 404, Subpart P, Appendix 1.  The ALJ found no limitations in the remaining three areas of 1) understanding, remembering, or applying information, 2) interacting with others, and 3) adapting or managing oneself.  AR 21.

Plaintiff maintains that the step two finding of mild mental limitations should be included in the ALJ's assessment of plaintiff's RFC.  ECF No. 7 at 18 (citing *Hutton v. Astrue*, 491 F. App'x 850, 850-815 (9th Cir. 2012)).  Defendant counters that *Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022) held that an ALJ adequately addressed the step two finding of mild limitations of mental functioning by stating that the finding was reflected in the assessment of RFC, and cites to district court cases that have followed *Woods*.[15]  ECF No. 12 at 14 (collecting cases); *see also Urzua v. Commissioner of Social Security*, No. 2:23-cv-02772-EFB, 2025 WL 565624, at * (E.D. Cal. Feb. 20, 2025) ("the ALJ's incorporation of the mild mental imitations assessed at step two was more than 'mere boilerplate'" and was "legally sufficient" where the mental RFC finding was supported by substantial evidence and plaintiff had not shown error in this finding).

But plaintiff relies on other district court cases that have distinguished *Woods* on their facts.  ECF No. 13 at 4-5.  In *Fortunato v. O'Malley*, No. 1:23-cv-00119-JDP, 2024 WL 1179966, at *4 & n.2 (E.D. Cal. Mar. 19, 2024), the district court distinguished *Woods* because the ALJ had assigned a mild mental limitation that was ambiguous as to the expected number of absences from work, and the ALJ's failure to discuss the impact of mild mental limitations when formulating the RFC was not harmless.  In *Diane E. v. Kijakazi*, No. 8:22-cv-02101-BFM, 2023 WL 7301969, at *6 (C.D. Cal. Nov. 6, 2023), the failure to include mild limitations in concentration, persistence, and pace in the ALJ's RFC analysis was not harmless because "the Court is unable to determine how the ALJ would have translated the mild limitation to the RFC."[16]  The claimants in both *Fortunato* and in *Diane E*. had raised a related issue, on facts

---

[15]  The court notes that the Ninth Circuit Court has issued another opinion on facts similar to *Woods* and reaching a similar conclusion.  *Alexander v. O'Malley*, No. 23-66213, 2024 WL 612877, at *1 (9th Cir. Feb. 14, 2024).  *Alexander* found no error in the ALJ's "fail[ure] to include a functional restriction related to [] mild mental limitation in [the ALJ's] RFC determination," where the claimant failed to "identify any evidence that the ALJ did not consider or explain how the record does not support the ALJ's finding."  *Id*.

[16]  Two other district court cases cited by plaintiff appear to be inapposite to the *Woods* analysis.  Although *Andrick v. Commissioner of Social Security Admin*., 669 F. Sup. 3d 819, 823, 826 (D. Ariz. 2023) was issued after the *Woods* opinion, it does not cite or analyze *Woods* in holding that incorporation by reference insufficiently explained the ALJ's reasoning.  *Brengan v. Kijakazi*, No. 2:22-cv-02208 AC, 2024 WL 626705 (E.D. Cal. Feb. 14, 2024) appears it may be distinguishable from *Woods* for a different reason, because it is unclear whether the ALJ actually made any statement at all about incorporating the step two finding in the RFC assessment.  *Id*. at *7 ("the ALJ is not free to completely ignore his own findings of mild limitations in the RFC

similar to the facts presented in this case. The district court in *Fortunato* held that the ALJ had erred specifically by failing to include plaintiff's mild functional limitation in the hypotheticals presented to the vocational expert, 2024 WL 1179966, at *4 n.2, and *Diane E*. held that the ALJ erred in not evaluating the expected number of absences from work caused by the mild functional limitation, 2023 WL 7301969, at *2. *See also Kirk v. Commissioner of Social Security*, No. 2:23-cv-019660EFB, 2024 WL 3673674, at *4 (E.D. Cal. Aug. 2, 2024) (since *Woods*, some district courts have "found that a cursory or inadequate discussion of the supportability factor can warrant remand" (citations omitted)).

As already noted, plaintiff's motion in this case broadly alleged a lack of substantial vocational evidence to support the ALJ's conclusion that plaintiff is not disabled. ECF No. 1 at 2. Vocational expert Fabian testified at the hearing about the effect of plaintiff's migraines on her employability, whether according to a presumed frequency of three days of migraine per month (as reported in medical records), or according to a presumed frequency of daily migraines (as reported in plaintiff's testimony). According to Fabian, in both instances the person is unemployable. *See* AR 48-49. The ALJ relied upon Fabian's testimony that plaintiff "would be able to perform her past relevant work as a preschool teacher, as generally performed," but did not discuss Fabian's testimony about presumed work absences, or the related question of whether or how plaintiff's mild mental limitation might affect plaintiff's work absences and employability. The district court in *Fortunato* found that a similarly ambiguous question of whether a mild mental limitation might affect the expected number of absences from work should have been explicitly weighed in the RFC analysis. 2024 WL 1179966, at *4 n.2 ("Unlike the situation in *Woods*, the ALJ in plaintiff's case assigned a mild mental limitation that is ambiguous concerning the expected number of absences per month. Accordingly, *Woods* does not govern."). As in *Fortunato*, there is an ambiguity whether plaintiff's mild mental limitations in concentrating, persisting, and maintaining a pace might affect her expected absences from work (whether related or unrelated to her migraines), which the ALJ omitted to explicitly address in the

analysis").

16

RFC analysis. *See* AR 38 ("In sum, the residual functional capacity accounts for the cumulative effects of the claimant's migraines, shoulder impingement and asthma." (record citations omitted)).

The court concludes that the ALJ erred in failing to address at step four how the plaintiff's mild mental limitations in concentrating, persisting, and maintaining a pace might affect her absences from work and in turn affect her RFC. This was harmful error, as these considerations were not factored into the ALJ's conclusion that plaintiff is able to perform her past relevant work as generally performed. AR 29. Likewise, these considerations would have to be factored into any conclusion about plaintiff's ability to perform other work if the analysis reached step five of the sequential analysis. Accordingly, summary judgment will be granted for plaintiff.

Plaintiff makes a final assertion that the finding of mild mental limitations "should have translated into at least some mental work restrictions with regard to her capacity for complex work and frequent social interaction." ECF No. 7 at 18. In reaching its holding here, the court expresses no opinion whether the finding of mild mental limitation may or may not ultimately lead to a finding of mental work restrictions.

**V.      Remedy**

With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.");

*Treichler*, 775 F.3d at 1105 ("Where ... an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole leaves doubt as to whether, absent the error, plaintiff would be found disabled during the relevant period. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

Accordingly, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

### Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 7) is GRANTED;

2. Defendant's cross-motion for summary judgment (ECF No. 12) is DENIED;

3. This matter is remanded for further proceedings consistent with this order.

Dated: March 17, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

18